# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

PETER WEST, ET AL.                    *CIVIL NO. 6: 09-1310

VERSUS                                *JUDGE DOHERTY

LOWES HOME CENTERS, INC.              *MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court for Report and Recommendation is the plaintiffs' Motion for Notice to Potential Class Members [rec. docs. 21 and 34].  The defendant has filed Opposition. [rec. docs. 24 and 37].  Oral Argument on the Motion was held and the Motion was taken under advisement.  [rec. doc. 40].

For the following reasons, it is recommended that the plaintiffs' Motion for Notice to Potential Class Members be **GRANTED** with respect to the external managers in training, reserving the plaintiffs' right to request certification with respect to internal managers in training after additional discovery.

## BACKGROUND

This lawsuit was filed on July 31, 2009 by Peter West ("West"), individually and on behalf of all others similarly situated, against Lowes Home Centers, Inc. ("Lowes"), asserting claims arising under the Fair Labor Standards Act ("FLSA"). West is a former Lowes manager in training, who participated in the Lowe's Manager Training Program ("MTP").  The putative collective action members are current and former managers in training for Lowes, who participated in the MTP. [*See* rec. doc. 1, ¶ 2].  The crux of the plaintiff's claims under the

FSLA is that Lowes violated the overtime wage provisions of the Act.  [*Id*.].

Presently, West moves to conditionally certify a collective action under 29 U.S.C. § 216(b) consisting of  "[a]ll current and former hourly managers in training who were employed at anytime by Lowes Home Centers, Inc. in the State of Louisiana and worked more than 40 hours a week in the manager training program during the time period July 31, 2006 to present."  [rec. doc. 8, ¶ 4].  If granted conditional certification under 29 U.S.C. § 216(b), plaintiffs request that Lowes be required to produce the names and addresses of all potential collective action members, and to allow plaintiffs to send notice of the collective action to those putative collective action members.

West is a former manager in training at the Lowes store located in New Iberia, Louisiana.  Since the filing of this lawsuit, four other opt-in plaintiffs have joined the action, Seth Veron ("Veron"), John Raxsdale ("Raxsdale"), Judith Bergman ("Bergman") and Matt Smith ("Smith"). [rec. doc. 4 and 7].   Veron, Raxsdale, and Bergman worked as managers in training at the Lowes s tore in New Iberia, Louisiana,[1] while Smith worked as a manager in training at a Lowes store in Lafayette, Louisiana and then completed his training at a Lowes store located in Katy, Texas.  Both Veron and Smith remain employed by Lowes; Veron is currently assigned to a Lafayette Lowes, while Smith is currently assigned to the Katy, Texas Lowes.

---

[1]While unclear, it appears that Raxsdale also trained at a Lafayette Lowes store for a short period prior to completing his training at the New Iberia store. *See* rec. doc. 4-1, pg. 3.

West and the other opt-in plaintiffs claim that, while participating in the Lowe's MTP, they were non-exempt, hourly paid employees, who were required to work more than forty hours per week. They allege, however, that they were paid for only forty hours of work and did not receive the overtime pay to which they were entitled by the FLSA.  Plaintiffs assert that, unlike other Lowes hourly wage employees, they were told not to clock-in and/or clock-out when beginning and ending their work shift.  Thus, by not requiring these employees to use the time clock, plaintiffs claim that Lowes was able to compensate them only for the time they were scheduled to work, and not compensate them for the actual hours they worked.

In support of these allegations, plaintiffs attach the declarations of West, Veron, Raxdale, Bergman and Smith.  All, except Smith, attest that while employed at the New Iberia Lowes, and while participating in the MTP, they were required to work more than forty hours per week, typically exceeding ten hours per day, at times on a six day per week schedule, without lunch, while not receiving overtime compensation for those hours worked in excess of forty, and that their "supervisors and other management . . . assumed responsibility for clocking [them] in and out every day."

Similarly, Smith attests that while employed at the Lafayette and Katy, Texas Lowes, and while participating in the MTP at both locations, he was required to work more than forty hours per week, typically exceeding ten hours per day, at times on a six day per week schedule, without lunch, while not receiving overtime compensation for those hours worked in excess of forty, and that his "supervisors and other management . . . assumed responsibility for clocking

me in and out every day."  He additionally attests that when he began at the Katy, Texas Lowes, "the same treatment of unpaid overtime wages was occurring at the store . . . and [this practice] continued for a few years." Smith further declared that he knew other managers in training "were subjected to the same practices and procedures," and that he was confident that "given the opportunity to do so, these individuals would participate in a  lawsuit to recover unpaid overtime compensation."   By deposition, Smith expounded on this statement, testifying that when he was at the Lafayette Lowes, another man, "Bubba", was participating in the MTP and that he, like Smith, worked over forty hours per week and did not punch the time clock.

The evidence reveals that there are two types of participants in the MTP – internal and external candidates.  The internal candidates are typically Lowes department managers who are promoted from within.  Thus, they enter the program while already employed by Lowes.  The external managers in training candidates, however, are hired from outside by Lowes to enter the program.  Thus, these candidates enter the program shortly after they begin their employment with Lowes.  The internal candidates, unlike the external candidates, apparently continued to clock-in and clock-out while they were in the manager in training program.  Thus, they were apparently paid overtime.  West and the other opt-in plaintiffs were external candidates.

_____

## LAW AND ANALYSIS

### Legal Standard

The Fair Labor Standards Act sets a general minimum wage for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a).  The FLSA creates a cause of action for violations of provisions of the Act, which include the minimum wage and overtime provisions. 29 U.S.C. § 216(b).

Section 216(b) of the FLSA permits a plaintiff to maintain such an action on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).  A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989).  The "remedial nature of the FLSA and the purposes of Section 216 militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079,  *24 (S.D. Tex. 2008) (and cases cited therein).

Unlike class actions brought under Fed. R. Civ. P. 23, a collective action under the FLSA provides an "opt-in", rather than an "opt-out" procedure for potential plaintiffs. *Mooney*

5

*v. Aramco Services*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).  District courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) in FLSA actions by facilitating notice to potential plaintiffs.  *Hoffman-La Roche, Inc.*, 493 U.S. at 169-170.

Two requirements must be met to maintain a collective action under the FLSA. *Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, *1 (E.D. La. 1992).  First, the named representatives and the members of the prospective FLSA class must be similarly situated.  *Id*. There must be "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.*; *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 508 (M.D. La. 2005). Second, the action at issue must be one of general effect.  *Whitworth*, 1992 WL 235907 at *1.  Accordingly, courts have held that a court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy or practice.  *Id. citing Burt v. Manville Sales, Corp*, 116 F.R.D. 276, 277 (D. Colo. 1987); *Basco v. Wal-Mart Stores Inc*., 2004 WL 1497709 at *5 (E.D. La. 2004).

Plaintiffs bear the burden of establishing that they are "similarly situated" to the proposed class. *Basco,* 2004 WL 1497709 at *5 citing Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. 2004) and *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D. Ala. 2002).   The FLSA does not define the term "similarly situated" such that collective adjudication of their claims is appropriate.   However, under the jurisprudence, "[w]hether

employees are 'similarly situated' is determined in reference to their 'job requirements and with regard to their pay provisions.'" *Xavier v. Belfor USA Group, Inc*., 585 F.Supp.2d 873, 877 (E.D. La. 2008)*; Lima v. International Catastrophe Solutions, Inc*., 493 F.Supp.2d 793, 799 (E.D. La. 2007) *quoting  Dybach v. Florida Dep't of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Lentz v. Spanky's Restuarant II, Inc.,* 491 F.Supp.2d 663, 669 (N.D. Tex. 2007); *Eggelston v. Sawyer Sportsbar, Inc*., 2010 WL 2639897, *3 (S.D. Tex. 2010) (noting that "a minimal showing that all members of the class are similarly situated in terms of job requirements and pay practice" is required).

Courts have held that "similarly situated" does not mean identically situated.  *Basco,* 2004 WL 1497709 at *5 *citing Crain v. Helmerich and Payne Intern'l Drilling Co.*, 1992 WL 91946, *2 (E.D. La. 1992); *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D. N.Y. 1988).  Thus, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement."  *Tolentino v. C&J Spec-Rent Services, Inc*., – F.Supp.2d – , 2010 WL 2196261, *7 (S.D. Tex. 2010).  However, "if the job duties among potential members of the class vary significantly, then class certification should not be granted." *Tolentino,* 2010 WL 2196261 at *7 *citing Dreyer v. Baker Hughes Oilfield Operations, Inc*., 2008 WL 5204149, at *2 (S.D. Tex. 2008); *Harris v. Fee Transportation Services, Inc*., 2006 WL 1994586, *5 (N.D. Tex. 2006).

Likewise, if the named plaintiffs and potential class members are compensated differently, class certification is not appropriate. *See Lentz*, 491 F.Supp.2d at 669; *Sheffield v.

7

*Orius Corp*., 211 F.R.D. 411, 413 (D. Or. 2002) (collective action certification denied based on the fact that the potential plaintiffs held different job titles, with different payment structures – piece-rate, hourly and salary).

Courts have utilized two methods for determining whether plaintiffs are similarly situated such that a collective action should be certified, the "two-step" method developed in *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D. N.J. 1987), and the "spurious class action" procedure employed by the district court in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).[2]  *Mooney*, 54 F.3d at 1213-1215.

The Fifth Circuit has expressly refused to endorse either method over the other. *Mooney*, 54 F.3d at 1216.  However, the prevailing method in this Circuit seems to be the "two-step" approach.  *Lang v. Direct T.V., Inc*., –  F.Supp.2d – , 2010 WL 3211081 (E.D. La. 2010) *citing Johnson v. Big Lots Stores, Inc*., 561 F.Supp.2d 567, 569 (E.D. La. 2008) (conditional certification is the majority approach); *Basco*, 2004 WL 1497709 at *4 ("the two-step *ad hoc* approach is the preferred method for making the similarly situated analysis"); *England*, 370 F.Supp.2d at 509 (noting that the two step approach "has been embraced more often in the Fifth Circuit than the spurious class action" approach).

This method is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc*. that "[t]here is a fundamental, irreconcilable difference between the class

---

[2]The "spurious class action" procedure, derives from the "spurious" class action procedure previously eliminated from Fed. R. Civ. P. 23.  *Mooney*, 54 F.3d at 1214. Under this approach, the court considers factors similar to those considered in Rule 23(c) cases, that is,  "numerosity," "commonality," "typicality," and "adequacy of representation," to determine whether a class should be certified.  *Id*. Neither party argues that this procedure should be applied in this case.

action described by [FRCP] Rule 23 and that provided for by FLSA § 16(b) [29 U.S.C.

§ 216(b) ]," namely the "opt out" procedure for class members under Rule 23 as contrasted

with the "opt in" procedure under § 216(b). *LaChapelle v. Owens-Illinois, Inc*., 513 F.2d 286,

288 (5th Cir. 1975); *see also Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th

Cir. 1981) ("The statutory framework of enforcement procedures of the FLSA and those of

Title VII are crucially different, but this difference highlights even more why Rule 23 is not

needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed

alternative to the Fed. R. Civ. P. 23 procedures."). Finally, the Fifth Circuit has recently

referred to the two step approach as the "typical [ ]" manner in which collective actions

proceed. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir. 2008).  Based on

the above, the undersigned finds that the "two-step"method is the preferred method of analysis

in the Fifth Circuit, and will be used by this Court here.[3]

The "two step" method lends itself to *ad hoc* analysis on a case-by-case basis.  *Mooney*,

54 F.3d at 1213.  Under the "two step" method, the court analyzes the "similarly situated"

inquiry using a two-step analysis.  In the first step, the "notice stage," the court determines

whether notice should be given to potential members of the collective action, "usually based

only on the pleadings and any affidavits."  *Mooney*, 54 F.3d at 1213-1214.  Because the court

has little evidence at this stage, "this determination is made using a fairly lenient standard, and

typically results in 'conditional certification' of a representative class." *Id*. at 1214.

---

[3]Again, neither party argues that the "spurious class action" procedure should be applied in this case.

If the Court grants conditional certification, notice to prospective claimants is issued, and the case proceeds as a collective action through discovery.  *Id*.  In the second step or the "decertification stage", generally done on the defendant's motion to decertify the conditional class filed after discovery is largely complete, the court considers, with the benefit of considerably more information, whether the employees are similarly situated.  *Id*.  At the second step, courts consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Id*. at 1213 n. 7.  If the court decides that a collective action is inappropriate, then it dismisses the opt-in plaintiffs and the case proceeds on the named plaintiffs' individual claims only. *Id.* at 1214.

The parties disagree as to whether West's Motion for certification of a collective action should be analyzed under the lenient "notice stage" standard or the higher standard typically used in the "decertification stage".  Lowes urges this court to proceed directly to the second step higher level of review, essentially bypassing the initial notice stage altogether, based on the discovery which has been conducted.  West, on the other hand, contends that the instant Motion should be analyzed under the more lenient "notice stage" standard.

While some courts have proceeded directly to the second step analysis when substantial discovery has occurred[4], or when "discovery is largely complete and the matter is ready for trial"[5], the undersigned finds that analysis under the notice stage standard is appropriate at this time.  While this case has been pending for over one year, discovery is far from complete.

While the parties have conducted much more discovery than is usually available at the first step of the two-step analysis (Lowes has deposed plaintiff West and the four other opt-in plaintiffs, and the parties have conducted some written discovery), it does not appear that West has deposed Lowe's representatives, and, as was noted in his opposition to Lowes' Motion for Summary Judgement, West has not engaged in merits discovery. [*See* rec. doc. 41-1].  Indeed, it was for that reason, amongst others, that Judge Doherty denied Lowes' Motion for Summary Judgment as premature. [rec. doc. 43].

---

[4] *See Basco*, 2004 WL 1497709 at *4 (considering the second step criteria in conjunction with the first step requirements because substantial discovery had been obtained)*; Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D.Cal. 2004) (finding that the second-step inquiry was appropriate when the parties agreed that sufficient discovery related to certification had been undertaken); *England*, 370 F.Supp.2d at 509 (stating that analysis under the second step was proper because substantial discovery had occurred, providing a sufficient record).

[5] *Gandhi v. Dell, Inc.*, 2009 WL 1940144, *4 (W.D. Tex. 2009) (noting that although the case had been pending for more than one year, it was improper to bypass the notice stage when discovery was far from complete and discovery was not directed to the merits of the case)*; Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal.2004) (noting that "courts sometimes bypass the first stage when discovery has been completed", but declining to do so in the case); *Mooney*, 54 F.3d at 1214 (noting that "second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial."); *Aguirre*, 2007 WL 772756 at *9 (noting "the parties have conducted much more discovery than is usually available at the first step of the two-step analysis. The defendants have deposed all of the eight plaintiffs who are now parties to this case; the plaintiffs have deposed several of the defendants' representatives; and the parties have conducted extensive document discovery. Although this discovery is not so extensive as to proceed directly to the second stage . . . .").

Thus, the undersigned concludes that the discovery obtained thus far is not so extensive so as to permit this court to proceed directly to the stricter second stage standard.[6] Accordingly, the undersigned will apply the more lenient "notice stage" standard in its analysis. The court will, nevertheless consider all the depositions, affidavits, and documents of record in deciding whether the first-stage requirements are met, without affording the evidence submitted by the plaintiff more weight than that submitted by the defendant. *See Aguirre*, 2007 WL 772756 at *9.

At the "notice stage", the grant of conditional certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan . . . ." *Mooney*, 54 F.3d at  at 1214 n. 8 *citing Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. at 407.   Moreover, "there must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Tolentino,* 2010 WL 2196261 at *3;  *Basco,* 2004 WL 1497709 at *5 *citing Barron v. Henry County School System*, 242 F.Supp.2d 1096 (M.D. Ala. 2003) and *Sheffield*, 211 F.R.D. at 416; *Xavier*, 585 F.Supp.2d at 877;  *England*, 370 F.Supp.2d at 508.

---

[6]Moreover, the undersigned notes that much of the delay in connection with resolution of the instant Motion and the discovery submitted in conjunction therewith, appears to have been occasioned at the request of Lowes. Although the instant Motion was filed on May 25, 2010, Lowes was permitted an extension of time to respond to the Motion so that depositions of the plaintiff and opt-ins could be obtained. [rec. docs. 22 and 23].  In response to the plaintiff's Motion to submit the supplemental declaration of Matt Smith, considering Lowes opposition to the grant of the Motion, the court allowed Lowes to depose Smith before September 15, 2010, and then further permitted the parties to file contemporaneous supplemental briefs addressing those issues raised by the deposition before October 12, 2010. [rec. docs. 28 and 31].  Thus, the Motion was not ready for oral argument until October 20, 2010, ten months after the Motion had been filed.

Finally, while Judge Doherty did not continue her January 31, 2010 trial date, the effect of her Order makes trial of this case on that date impossible.  Thus, it is clear that this case will have to be reset and a new Scheduling Order issued.

The plaintiff also bears the burden of making a preliminary factual showing that similarly situated individuals exist. *Lima*, 493 F.Supp.2d at 798. Thus, while the standard at the "notice stage" is lenient, it is by no means automatic. *Id*.; *Xavier*, 585 F.Supp.2d at 878. Indeed, it "would be a waste of the Court's and litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart, Inc*., 256 F.Supp.2d 941, 945 (W.D. Ark. 2003).

The current proposed collective action includes both internal and external MTP candidates. However, no internal candidates have opted in to this case; West and all opt-in plaintiffs were former external managers in training. Moreover, from the evidence before this court, it does not appear that the two classes of MTP candidates are "similarly situated." To the contrary, the evidence suggests that the internal candidates were not subject to the same practice alleged by the external candidates as the internal candidates continued to clock themselves in and out while they participated in the MTP, just as they had done when previously working for Lowes in other capacities.[7]

Moreover, because their time was recorded in the punch clock system, there is evidence which *suggests* that the internal candidates were paid overtime for those hours worked in excess of forty hours per week.[8] However, during oral argument both parties acknowledged

---

[7]*See* rec. docs. 24-1, pgs. 5-6; 24-3, pgs. 19-21; 24-4, pgs. 17; 37-5, pgs. 32-33, 44.

[8]*See* 24-4, pgs. 17; 37-5, pgs. 32-33, 44.

that there has been no discovery as to whether, despite their having clocked-in and clocked-out, the internal managers in training were, *in fact*, being paid overtime.  Counsel for Lowes stated that Lowes did not investigate whether this was the case; counsel for plaintiffs' similarly said that it was his recollection that this issue was not addressed in discovery. Thus, on the record before this court, the undersigned concludes that the collective action class definition should not include internal MTP candidates.

The undersigned's finding, however, is not fatal to the plaintiff's instant request.  As in the class-action context, this court has the power to modify an FLSA collective action parameters on its own. *Dreyer v. Baker Hughes Oilfield Operations, Inc*., 2008 WL 5204149, *3 (S.D. Tex. 2008) *citing Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005) (noting the court's power to "limit the scope" of a proposed FLSA collective action).  For the reasons set forth above, and for those additional reasons which follow, the undersigned concludes that the collective action should be limited to external MTP candidates only, reserving the plaintiffs' right to request re-certification with respect to internal managers in training after additional discovery.[9]

Under the lenient standard applicable at this stage of the proceedings, the plaintiffs have shown that notice of a state-wide collective action is warranted with respect to the class of external managers in training.

---

[9]Accordingly, this court will allow discovery on the pay practices relating to internal MTP candidates.

14

The external MTP candidates have sufficiently demonstrated that they were, together, the victims of a common policy or practice of Lowes.  The external candidates, which include West and all four opt-in plaintiffs, claim that Lowes' practice of having supervisors or other management personnel record their hours worked, instead of having these hours recorded on the punch time-clock system, allowed Lowes to avoid payment of statutorily mandated overtime.  The record supports a finding that this alleged policy or practice existed.  West and the four opt-in plaintiffs have provided both their declarations to this effect, as well as their deposition testimony, in which each similarly asserts that they were told by their human resource managers not to clock-in and/or clock-out because their work time would be kept for them, and that, despite their having worked in excess of forty hours per week, they did not receive overtime pay.[10]

Lowes argues that the alleged policy "appears to be a disconnect in the New Iberia store" which does not support a statewide collective action.  However, the declarations and deposition testimony of the plaintiffs refute this allegation.  Although four plaintiffs (West, Veron, Raxdale and Bergman) trained in the New Iberia store, Smith also trained at the Lafayette, Louisiana and Katy, Texas stores.  Smith states that the alleged practice was followed in each of these stores by each store's human resource manager.  Thus, the plaintiff has submitted evidence that supports a finding that the alleged practice is not limited to the

---

[10]*See* rec. docs. 21-1; 21-2; 21-3;  21-4; 24-1, pgs. 8-9, 26 (Bergman); 24-2, pgs. 20, 27- 28 ( Raxsdale); 24-3, pgs. 3-6 (Veron); 24-4, pgs. 8-11, 26 (West);  rec. doc. 37-5, pgs. 21 and 34-2, pgs. 19-2, 7, 12 (Smith).

Lowes argues that the plaintiffs' declarations are conclusory and without sufficient factual detail.  When the plaintiffs' declarations are considered in conjunction with their deposition testimony, which has been submitted by both the plaintiffs and Lowes, this argument lacks merit.

New Iberia store, but is practiced in at least two other locations.  In their depositions, the plaintiffs have identified not only several human resource managers from these three locations who they allege are following this policy, but also have identified other members of management who are alleged to have known of the practice, including the district manager over eight Louisiana stores,[11] thus, lending support to plaintiffs' claim that the policy or practice is more widespread than Lowes now claims.

For the same reasons, the undersigned rejects Lowes' argument that West's "claim is based on his own unique experience."  Given the above evidence suggesting that the alleged practice was occurring in three Lowes stores, the alleged practice does not appear to be unique or purely personal to West.  Furthermore, although contrary to Lowe's alleged standard policy prohibiting "off the clock" work for hourly paid employees, the plaintiffs have sufficiently demonstrated the existence of  another contradictory policy or practice which affected external MTP candidates.

The undersigned acknowledges the "happy camper" declarations submitted by Lowes from various locations within this state, which contradict the declarations and testimony of the five plaintiffs, offered in opposition to state wide certification.  It does not appear that the plaintiffs have yet had the opportunity to depose these declarants.[12]  Moreover, during oral

---

[11]During oral argument, plaintiff's counsel cited the deposition of Smith at page 144, lines 13-17 in support of this claim.  However, that page has not been submitted to the court for review.  The undersigned accepts this representation made by counsel.

[12]The undersigned notes that Lowes alleges that plaintiff expressed a desire to take three depositions, but elected not to go forward.  At this stage of the proceeding, plaintiff is not required to provide this court with deposition testimony to support collective adjudication.  Such evidence is typically presented during the

argument, plaintiff's counsel advised that the information he has received thus far in discovery has been limited by Lowes' refusal to provide all of the information requested, Lowes having objected to the majority of the requests.[13]

The external MTP candidates are "similarly situated" in that they were all allegedly non-exempt hourly paid employees, who were compensated in a similar manner, and they all had the same job requirements and performed substantially the same duties and responsibilities.

The external managers in training were compensated in the same manner – they were paid by the hour based on a forty hour work week, a fact which Lowes does not contest. *See* rec. doc. 24-7, Cluse decl., ¶ 7. Moreover, plaintiffs have made substantial allegations, confirmed by their deposition testimony, that Lowes treated them similarly with regard to overtime compensation.  They all claim that although they worked, at times, sixty hours per work week, they were generally compensated for only forty hours.[14]

Review of the declarations submitted by the plaintiffs and their deposition testimony confirms that the external MTP candidates held the same job title.  Moreover,  while there was some degree of variation in the plaintiffs' daily activities, for the most part, the external MTP candidates performed substantially the same core job duties and had substantially the same responsibilities.  They were responsible for learning all aspects of a zone manager's job, which

---

"decertification stage" of the proceeding.

[13]The undersigned expresses no opinion on the validity of any objections made in the discovery to date.

[14]*See* rec. docs. 21-1, ¶ 4; 21-2, ¶ 4; 21-3, ¶ 4; 21-4, ¶ 4; 34-1, ¶ 4; 34-2, pg. 6-7, 12-13; 24-1, pg. 8-9; 24-2, pgs. 23-24; 24-3, pg. 3; 24-4, pg. 8, 22.

necessarily entailed both training and learning about the product lines, how to supervise others, and helping with store related tasks such as pricing and inventory, and learning to analyze reports associated therewith.

Given the commonality in position, classification and treatment, as well as the substantial similarity in the overriding basic job duties and responsibilities of the potential class members, which do not vary in any significant aspect, at this stage of the proceedings, the slight differences in the daily activities noted by Lowes do not run afoul of the similarly situated requirement. *See Tolentino*, 2010 WL 2196261 at * 7; *Dreyer,* 2008 WL 5204149 at *2.

Under the lenient standard applicable at this stage of the proceeding, notwithstanding the declarations offered by Lowes to the contrary, the undersigned finds that the plaintiffs have presented enough support for this court to certify a state-wide collective action.  If this alleged policy or practice was occurring at the New Iberia, Lafayette and Katy, Texas stores, it is not inconceivable that such a policy or practice was occurring at other Louisiana stores, evidence of which has yet to be discovered.  Conditional certification is particularly appropriate in this case, given that Lowes may present its arguments against state-wide certification at the second stage of the proceeding (the decertification stage) after additional discovery has occurred, when the court will be in a position to scrutinize all of the evidence in greater detail.

Lowes argues that collective action is not appropriate here because the court will have to make a unique and individualized analysis of candidate's status, thus rendering representative

18

testimony impossible.  Lowes argument ignores the evidence in the record which supports

collective adjudication.   The liability issue presented by each prospective collective action

member is the same – the existence, or non-existence, of a policy or practice whereby, unlike

other hourly employees, external managers in training were told not to clock-in and/or clock-

out, to avoid the payment of overtime wages for those hours worked in excess of forty, in any

given work week.  Hence, judicial efficiency will be promoted though collective adjudication

of the legal issues associated therewith.

Moreover, given the fact that each external manager in training participated in the MTP

for only a short period of time,[15]  requiring individualized adjudication of each claim would

undermine the broad remedial purposes of the FLSA, which affords plaintiffs "the advantage of

lower individual costs to vindicate rights by the pooling of resources" thereby benefitting the

"judicial system . . . by efficient resolution in one proceeding of common issues of law and

fact." *See Hoffman-La Roche, Inc.*, 493 U.S. at 170; *Roussell, supra*. *See also Bradford v. Bed

Bath and Beyond*, 184 F.Supp.2d 1342, 1351 (N.D. Ga. 2002) (noting that plaintiffs can

"hardly be expected to pursue these small claims individually, so there is little likelihood that

their rights will be vindicated in the absence of a collective action.").

Lowes argues that whether each proposed class member may be considered a non-

exempt employee entitled to overtime will require an individualized determination, not

---

[15]The MTP is generally designed to be an eight week program, at the conclusion of which, a trainee is
eligible to be a zone manager, a salaried position.  *See* rec. docs. 24-7 Cluse decl., ¶ ¶ 3, 4; 24-9 Kelly decl., ¶ ¶ 3, 4;
24-1, pg. 10-11;  24-2, pg. 3; 24-4, pgs. 7, 12-13.

appropriate for collective adjudication.  While Lowes may ultimately prove correct, and individual issues may, in the end, render a collective action inappropriate, the undersigned finds, that consideration of these factual issues is more appropriately raised on a motion to decertify the collective action once full discovery has been conducted.  *See Dreyer*, 2008 WL 5204149 at *3 (noting that the determination as to whether an exemption from the applicability of the FLSA applies is a merit based defense which cannot defeat conditional certification)*; Prater*, 2007 WL 4146714 at *7*; Robinson v. Empire Equity Group, Inc.,* 2009 WL 4018560, at *4 (D. Md. 2009) (and cases cited therein) (declining to consider defendant's exemption argument at the notice stage, finding that such arguments are more appropriately addressed at the decertification stage); *Beall v. Tyler Technologies, Inc.,* 2009 WL 1766141, *3 (E.D. Tex. 2009).  *See also, Indergit v. Rite Aid Corp.*, 2010 WL 2465488, * 9-10 (S.D. N.Y. 2010).

Finally, Lowes asserts that the plaintiffs' failure to offer additional evidence from potential class members who desire to opt-in is fatal to conditional certification.  However, several courts, including this court, have found that such evidence is not essential for conditional certification.  *See Green v. Plantation of Louisiana, LLC,* 2:10cv0364, rec. doc. 49*; Dreyer*, 2008 WL 5204149 at *3 *citing Heckler v. DK Funding*, LLC, 502 F.Supp.2d 777, 780 (N.D. Ill. 2007) and *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002); *see also Johnson v. Big Lots Stores, Inc.*, No. 2:04-cv-3201, rec. doc. 36 (E.D. La. 2005) *citing Neagley v. Atascosa County*, 2005 WL 354085, *3 (W.D. Tex. 2005) (stating that although affidavits of other similarly situated employees "would help make the initial determination of a collective

20

action easier, the Court does not believe that it is required") and *Taillon v. Kohler Rental Power, Inc.*, 2003 WL 2006593, *3 (N.D. Ill. 2003) (holding that there is no "independent requirement of proof of desire to join in the action for authorization of notice under § 216(b)). Moreover, even if the plaintiffs were required to provide such evidence, the plaintiffs have effectively done so here.  Since Peter West filed this lawsuit, four additional former external MTP candidates have joined the lawsuit as opt-in plaintiffs.

In sum, on the basis of the present record, under the lenient standard that applies at this stage of the proceeding, the undersigned concludes that conditional certification of a state-wide collective action of external mangers in training is proper.[16]  The time period for the collective action is July 31, 2006 to the present.

**Notice**

Because the plaintiffs have made the requisite showing for conditional certification of a statewide external manager in training collective action, given the number of potential members and the limited information available to the plaintiffs, the undersigned finds that this case presents an appropriate situation for the Court to involve itself in the notice process.  *See Hoffmann-La Roche, Inc*., 493 U.S. at 169.

The plaintiffs have requested that this Court approve their proposed Notice and Consent forms attached to the Motion.  After conditional certification is granted, courts often instruct the parties to confer and submit a joint proposed notice to the court for approval.  *See Suarez v.*

---

[16]This is particularly the case since the plaintiffs have not yet had a full opportunity to depose the "happy camper" declarants or to obtain additional discovery from Lowes, and, in particular, discovery which is not limited to the southwest portion of Louisiana.

21

*S&A Painting and Renovation Corp.*, 2008 WL 5054201, *3 (E.D. N.Y. 2008);  *Davis v.*

*Abercrombie & Fitch Co.*, 2008 WL 4702840, *12 (S.D. N.Y. 2008); *Frederick v. Dreiser*

*Loop Supermarket Corp.*, 2008 WL 4724721, *2  (N.D. N.Y. 2008); *Chowdhury v. Duane*

*Reade, Inc.*, 2007 WL 2873929, *6 (S.D. N.Y. 2007).

Accordingly, in the event that this Report and Recommendation is adopted by Judge

Doherty, within ten days of Judge Doherty's Ruling, the parties shall contact the offices of the

undersigned to schedule a status conference to discuss the form of the notice.[17]

**Request for Production**

The plaintiffs have also requested that this Court order production of the names and

addresses of all potential collective action members.  At this time, the plaintiffs' request is

premature.  Lowes is advised, however, that in the event that this Report and Recommendation

is adopted by Judge Doherty,  it will be directed to provide the plaintiffs with the names and

addresses of those persons eligible to join the collective action, and that the time for making

production will be limited.  Accordingly, Lowes may wish to begin efforts to obtain this

information prior to final Ruling by this Court.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the plaintiffs' Motion for

Notice to Potential Class Members be **GRANTED,** with respect to the external managers in

training, reserving the plaintiffs' right to request certification with respect to internal managers

---

[17]At that time, the parties should also be prepared to discuss a new trial date.

in training after additional discovery.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by F.R.C.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association*, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 15th day of December, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

23